# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

--------------------------------------------------------------x

MANUEL GUERRERO,                                    :     02 Civ. 9600 (RJH) (MHD)
                                                    :
                    Petitioner,                     :
                                                    :
        -against-                                   :     **MEMORANDUM**
                                                    :     **OPINION AND ORDER**
FRANK TRACEY, Superintendent,                       :
Downstate Correctional Facility,                    :
                                                    :
                    Respondent.                     :
                                                    :
--------------------------------------------------------------x

In March 1998, following a jury trial in New York Supreme Court, Bronx County,

petitioner Manuel Guerrero was convicted of Attempted Murder in the Second Degree

and Criminal Possession of a Weapon in the Second Degree. The court sentenced

petitioner, a second felony offender, to concurrent terms of ten to twenty years for the

attempted murder count and five to ten years for the weapons possession count.

Petitioner seeks a writ of habeas corpus on two grounds. First, petitioner alleges

that the jury's verdict against him was against the weight of the evidence and that the

prosecutor failed to prove beyond a reasonable doubt that petitioner was guilty because

the only evidence against him was the testimony of two eye-witnesses who lacked

credibility. Second, petitioner asserts that because his co-defendant, Radames Rojas, was

released after newly discovered evidence proved that Rojas was misidentified, petitioner,

too, must be released.

On April 29, 2005, Magistrate Judge Michael H. Dolinger issued a Report and

Recommendation ("Report") recommending that the petition be denied and dismissed

1

with prejudice. Petitioner filed objections to the Report, but for the reasons set forth below, the Court adopts the Report in its entirety.

## STANDARD OF REVIEW

A district court may designate a magistrate to hear and determine certain motions and to submit to the court proposed findings of fact and a recommendation as to the disposition of the motion. *See* 28 U.S.C. § 636(b)(1). Within ten (10) days of service of the recommendation, any party may file written objections to the magistrate's report. *Id.* If no objections are filed, or where objections are "merely perfunctory responses," argued in an attempt to "engage the district court in a rehashing of the same arguments set forth in the original petition," reviewing courts should review a report and recommendation for clear error. *Vega v. Artuz*, 2002 WL 31174466, at *1 (S.D.N.Y. Sept. 30, 2002); *accord Nelson v. Smith*, 618 F. Supp. 1186, 1189 (S.D.N.Y. 1985). On the other hand, where objections to a report are "specific and . . . address only those portions of the proposed findings to which the party objects," district courts should conduct a *de novo* review of the issues raised by the objections. *Camardo v. Gen. Motors Hourly-Rate Employees Pension Plan*, 806 F. Supp. 380, 381-82 (W.D.N.Y. 1992).

In his objection to the Report, petitioner requests that the Report be rejected and repeats the claims made in his original petition, stating, "I still think my Habeas petition should be granted for the same two grounds." (Pet'r Obj. to Mag. Report at 1.) Because petitioner's objections merely restate his original arguments, this Court will review the Report for clear error.

## DISCUSSION

Petitioner filed his habeas petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. 104-132, 110 Stat. 1214 (April

2

24, 1996). Thus, this Court applies the standard of review established by section 2254(d) of AEDPA. *Torres v. Berbary*, 340 F.3d 63, 67-68 (2d Cir. 2003); *Vasquez v. Strack*, 228 F.3d 143, 147 (2d Cir. 2000). Under AEDPA, a federal court may grant a petition for habeas corpus, notwithstanding contrary state court adjudication on the merits, in accordance with the following provisions:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

With regard to the evidentiary insufficiency claim, the Magistrate Judge found no error under federal law. (Report 22–27.) At petitioner's trial, his defense counsel presented questions of witnesses' credibility to the jury, which, despite those considerations, found petitioner guilty. (Report at 26.) The conviction must be upheld if, "after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." (Report at 24 (quoting *Jackson v. Virginia*, 443 U.S. 307, 319 (1979)).) The Magistrate Judge found the petitioner unable to carry his burden of showing that no rational trier of fact could have believed the witnesses and convicted him. (Report at 26–27.)

The Magistrate Judge noted that petitioner's second claim, that his conviction must be dismissed because his co-defendant's conviction was dismissed, is unexhausted in the state courts, but nonetheless recommended that it be dismissed on the merits

3

pursuant to 28 U.S.C. § 2254(b)(2). (Report at 19–20 (citing *Pratt v. Greiner*, 306 F.3d 1190, 1197 (2d Cir. 2002) ("A district court also may . . . deny a petition on the merits even if it contains an unexhausted claim.")).) The Magistrate Judge found that "[t]he circumstances surrounding the identification of Guerrero and the misidentification of Rojas are completely different," making petitioner's claim on this ground meritless. (Report at 20.)

Because this Court finds no clear error in the Magistrate Judge's Report, the Court adopts the Report in its entirety over petitioner's objection.

## CONCLUSION

For the reasons set forth above, the Report and Recommendation of Magistrate Judge Michael H. Dolinger, dated April 29, 2005, is adopted in its entirety, and the petition of Manuel Guerrero for a writ of habeas corpus is dismissed with prejudice. Any appeal from this Order would not be taken in good faith under 28 U.S.C. § 1915(a)(3). *See Coppedge v. United States*, 369 U.S. 438, 445–46 (1962). As petitioner has not made a substantial showing of the denial of a federal right, a certificate of appealability will not issue. 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 112 (2d Cir. 2000). The Clerk of the Court is directed to close this case.

SO ORDERED.

Dated: New York, New York
March 31, 2006

Richard J. Holwell
United States District Judge

4

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------x
MANUEL GUERRERO,                      :
                                      :
            Petitioner,               :    **REPORT AND RECOMMENDATION**
                                      :
        -against-                     :    02 Civ. 9600 (RJH)(MHD)
                                      :
FRANK TRACEY, Superintendent,         :
Downstate Correctional Facility,      :
                                      :
            Respondent.               :
--------------------------------x

**TO THE HONORABLE RICHARD J. HOLWELL, U.S.D.J.:**

Pro se petitioner Manuel Guerrero seeks a writ of habeas corpus challenging his 1998 conviction, following a jury trial in New York State Supreme Court, Bronx County, for Attempted Murder in the Second Degree and Criminal Possession of a Weapon in the Second Degree. The court sentenced Guerrero as a second felony offender, imposing concurrent indeterminate terms of from ten to twenty years on the attempted murder count, and five to ten years on the weapons possession count. Guerrero is currently incarcerated pursuant to that sentence.

In his habeas petition, Guerrero advances two grounds for relief. He alleges: (1) that the prosecutor failed to prove his guilt beyond a reasonable doubt and that the verdict was against the weight of the evidence, since the only evidence against him consisted of the testimony of two witnesses who were unworthy of belief; and (2) that since his co-defendant was released on a New

York Criminal Procedure Law § 330.30 motion after newly-discovered evidence proved his innocence, he too should have been released. (See Habeas Petition filed December 3, 2002 ("Pet.") at ¶ 13).

The respondent argues that, because the second claim is unexhausted, Guerrero presents a mixed petition and thus the court may (a) dismiss the entire petition; (b) permit the petitioner to excise his unexhausted claim from the petition and give him a conditional stay of proceedings until he exhausts the unexhausted claim; or (c) deny his exhausted claim on the merits and dismiss his unexhausted claim as procedurally forfeited. (See Respondent's Memorandum of Law ("Resp. Memo") at 6-7). Respondent further contends that petitioner's exhausted claim is meritless. (See id. at 7-8).

For the reasons that follow, we recommend that the writ be denied and the petition dismissed.

## BACKGROUND

### I. Indictments and Pre-Trial Hearing

The charges against Guerrero stemmed from the shooting of Gregorio Brito, a cab driver and crack dealer, in the early morning

2

hours of July 22, 1995. Brito was shot six times, but recovered from his wounds. Guerrero's conviction was based primarily on the eyewitness testimony of Brito and his live-in girlfriend, Chastity Alvarez, who identified Guerrero as one of the three shooters.

A Bronx County Grand Jury indicted Guerrero on October 31, 1995, accusing him of acting in concert with another to commit attempted murder in the second degree, assault in the first degree (two counts), and criminal possession of a weapon in the second and third degrees. (See Affidavit of Assistant District Attorney Lynetta M. St. Clair, sworn to Mar. 11, 2003, Ex. 2 at 3).

Two other individuals were separately indicted in connection with the attack on Brito. The indictment of one of them, Radames Rojas, was consolidated with petitioner's indictment, and the two were tried together. Id. at 3, n.1. The third individual, Jose Rodriguez, was indicted in November 2000, and tried separately.[1] Id.

In petitioner's case, following a Wade hearing, which took place from June 9 to 16, 1997, Justice Harold Silverman denied

---

[1] Rodriguez was found guilty of attempted second-degree murder. See Resp. Memo at 3, n.1. His conviction was later upheld on appeal. People v. Rodriguez, 1 A.D.3d 162, 766 N.Y.S.2d 843 (1st Dep't 2003), lv. to appeal denied, 1 N.Y.3d 634, 777 N.Y.S.2d 32 (2004).

3

Guerrero's suppression motion in all respects. Id. Guerrero raises

no issues with respect to that hearing in his habeas petition.

## II. Trial Testimony

At trial, Brito testified to a rather long history of selling

drugs, including an arrest for selling crack cocaine in October

1988 followed by a plea in 1989 and a sentence of five years

probation. (See Trial Testimony ("T.T.") at 40, 94-97). In 1992,

while on probation, Brito again began selling crack cocaine.[2] He

stated that he and Guerrero had worked for a man named Frankie who

controlled a drug spot at the corner of Watson and Manor Avenues in

the Bronx. (T.T. at 39, 41, 157). Brito would pick up the money

from the drug sales and give that money to Guerrero, whom he had

known since 1988. (T.T. at 41, 43, 105). When Guerrero inherited

the drug spot, Brito worked for him, and saw him every week.

According to Brito, in 1994 Guerrero retired from the drug

_____

[2] Brito testified that a warrant for his arrest had been
issued in April 1992, which was vacated in 1995, but he had not
known about it at the time. (T.T. 148, 150-51). In February 1995,
while standing with friends who were selling drugs at the corner
of Watson and Manor Avenues in the Bronx, he was arrested during
a narcotics sweep, but the charges were dropped. (T.T. 40, 102-
05, 157). Brito admitted that he had lied to his probation
officer about whether he was using drugs; that he had entered the
United States illegally; and that he had not filed a 1994 tax
return reporting the approximate $500.00 per week that he earned
selling drugs. (T.T. 101, 107-08, 152-54, 176).

4

business -- stating that he did not want anything to do with the drug business anymore -- and opened a bodega. (T.T. at 42-45, 105-06). Brito in turn inherited the drug spot, and supervised three employees selling crack around-the-clock. (T.T. at 45, 106-07, 159-60). Brito insisted that he never carried a gun because it was "against the law" to do so. (T.T. at 113, 151, 162, 176-77).

On either July 17 or 19, 1995, Guerrero (known to Brito as "Manny"), and two other men, whom Brito did not know, approached him at the drug spot. Brito described one of the men as taller than Guerrero, and described the third man as "short." (T.T. at 45-47, 51, 106, 111). Guerrero told Brito that he wanted to resume selling drugs at that corner, but Brito refused to vacate the spot. (T.T. at 47). According to Brito, an argument ensued. (Id.). As the argument became heated, the person he later learned was named Rojas held a knife against his side. (T.T. at 46, 49-50, 54). Guerrero ended the argument by telling Brito "there is nothing else to talk" and "I know what I have to do." (T.T. at 48). Brito was afraid and bought a bulletproof vest from a friend. (T.T. at 49, 56).

In the early morning hours of July 22, Brito -- who had been partying at a strip club -- picked up his girlfriend, Chastity

5

Alvarez, from a friend's house. (T.T. at 56-57, 114-17).[3] At about 2:30 a.m., Brito and Alvarez drove into the parking lot of their apartment building at 3240 Riverdale Avenue. (T.T. at 57, 257). Alvarez exited the car and, as Brito parked, she walked up some stairs to the vestibule of the building. (T.T. at 58, 120). Brito related that, as he got out of the car, he heard gunshots and saw "Manny" pointing a gun at him from about five feet away. (T.T. at 58-59, 75-76). Then he saw Rojas and the short man, and they began to shoot at him. (T.T. at 58-60). He heard Alvarez screaming "Please stop, please stop, somebody help me, somebody help me." (T.T. at 58). He ran toward a fence but fell to the ground, having been shot six times. (T.T. at 58, 77-78, 130). Although it was dark outside, Brito described the parking area as illuminated by two lights, which enabled him to see the shooters. (T.T. at 81, 83).

Alvarez testified that after Brito had dropped her off, she walked over to the elevator and then heard shots. She saw Guerrero, whom she had known for two to three years, as he ran by. (T.T. at 258-59, 263). She also saw Rojas and the "short guy" running with Guerrero, and shooting at Brito. (T.T. at 259-60). Alvarez estimated that she was twenty-five to thirty feet from Rojas and the short person when she observed them. She commented that the

_____

[3] Brito had lived with Alvarez since 1992 and they had a child together; at the time of the incident, Alvarez was pregnant with his second child. (T.T. at 165, 257).

6

lighting had enabled her to see the shooters, and that she had an unobstructed view of Guerrero and Rojas. (T.T. at 264-67, 272-73). She added that, as the men were running away, Rojas stopped, turned around to look where Brito had fallen, looked up at her for a few seconds, and then ran off. (T.T. at 268-69, 273). She started screaming for help. (T.T. at 274). After the assailants left the scene, she went over to Brito, who was "barely talking, he was talking real low." He told her to phone for help, but she could not find the cellphone. (T.T. at 275, 284-85). She climbed the fence at the back of the parking lot and stopped a police car. (T.T. at 275). The ambulance eventually arrived and took Brito to the hospital. (T.T. at 279).

Alvarez further testified that because the police officers were interviewing her about the incident, she was unable to accompany the ambulance to the hospital. (Id.). A few days after the shooting, she switched Brito's name at the hospital to "Nelson Brown" because "Manny was a long time friend of him and knew his real name and I didn't want, you know, since he was in the hospital, anybody to get access to him so I switched his name." (T.T. at 286).

She admitted that she had lied to a number of police officers about the incident. She had told them that two people, not three,

7

had been involved in the shooting, and she had not mentioned that Guerrero was one of the perpetrators. (T.T. 280, 305-06, 316-17, 324-26). She also admitted that when she testified before the grand jury, she had mentioned some details about the shooting and left out others. (T.T. at 303-08). She explained that she had not told the police what she eventually testified to at the trial because, after the shooting, she was "scared" and "confused," and did not want to "jeopardize" her life by revealing who was involved. (T.T. at 280-81). At the time, she did not know whether Brito "was going to live or not. And, you know, [Rojas] didn't know me, but Manny knew me and I was pregnant and I didn't want them to come and harm me or harm my unborn child. So I just didn't feel like -- I didn't feel like speaking the truth, I didn't feel like saying nothing." (T.T. at 280). Once she learned that Brito was going to live, she decided to come forward with the truth about the shooting. (T.T. at 282). Both Brito and Alvarez picked Guerrero out of a lineup, and also identified him at the trial. (T.T. at 42, 172-73, 275, 283).

Benjamin Greif, who lived across the street from the parking lot, testified that he had been awakened by three shots, and that after a pause, he heard five more shots, and saw two people running away on the opposite side of his street. (T.T. at 212). He described them as two thin Hispanic males, one a bit taller than the other. (T.T. at 214).

8

Officer Steven Cowen testified that, on the night of the shooting, he had received several radio calls that shots had been fired in the vicinity of the apartment house, but that he initially did not see anyone when he and his partner drove around the neighborhood. (T.T. at 235). Then they heard a female screaming for help, and they drove to the parking lot, which he described as "well lit." (T.T. at 235-36, 238). He saw Brito, who, although conscious, "appeared to be dying." (T.T. at 237). Cowan crouched down to speak with Brito and asked who had shot him. (T.T. at 239). Cowan found it difficult to understand Brito, who was speaking "barely above a whisper," with an accent, groaning and "arching [sic] in pain," and thought that Brito said "Monty." (T.T. at 239-41, 250). He wrote the name "Monty" in his paperwork as the name of the shooter. (T.T. at 241-42).

Cowan testified that Brito had told him that his girlfriend knew who had shot him, but when Cowan tried to ask Alvarez questions, she was not very cooperative. (T.T. at 241). Cowan asked Alvarez what she had seen, and she told him that there were just two perpetrators, one of whom was tall and the other short, and that she did not know who they were. (T.T. at 250-53).

Dr. David Gitlitz, an expert in trauma surgery, testified that upon Brito's arrival at the hospital, he underwent more than four

9

hours of surgery. (T.T. at 218, 220-21). At the time of the trial, three of the six bullets remained in Brito's body because their removal would cause too much damage. (T.T. at 226, 230).

Detective George Moreno testified that on August 12, 1995, he arrested Rojas. (T.T. at 192). Officer Nelson Patino testified that he arrested Guerrero on October 15, 1995. (T.T. at 187).

Neither defendant presented any evidence.

In March 1998, the jury convicted Guerrero and Rojas of attempted murder in the second degree and criminal possession of a weapon in the second degree. (T.T. at 512-13). Guerrero was sentenced as indicated above.

## III. Post-Conviction Proceedings

### A. Guerrero's Appeals

Guerrero appealed his judgment of conviction to the Appellate Division. (See St. Clair Aff., Ex. 2). He raised only one ground:

The people failed to prove [his] guilt beyond a reasonable doubt and the verdict was against the weight of the evidence where the only evidence against him consisted of the testimony of two purported witnesses who were utterly unworthy of belief. U.S. Const., Amend. XIV; N.Y. Const., Art. I, § 6; People v. Bleakley, 69 N.Y.2d

10

490 (1987).

(Id.).

In March 2002, the Appellate Division unanimously affirmed
Guerrero's conviction. It held that the verdict was based on
legally sufficient evidence and was not against the weight of the
evidence. Thus, it observed that "[i]ssues of credibility,
including the weight to be given the backgrounds of the People's
witnesses, were properly considered by the trier of facts and there
is no basis upon which to disturb its determinations." People v.
Guerrero, 292 A.D.2d 266, 738 N.Y.S.2d 848, 849 (1st Dep't 2002).

In March 2002, petitioner sought leave to appeal to the New
York Court of Appeals. (See St. Clair Aff., Ex. 3). In his letter
application, Guerrero's attorney quoted the point raised in the
Appellate Division brief, and noted that this argument was based on
state and federal claims. Id. The Court of Appeals denied
Guerrero's application in June 2002. (See People v. Guerrero, 98
N.Y.2d 676, 746 N.Y.S.2d 465 (2002) (Graffeo, J.)).

Petitioner did not seek certiorari from the Supreme Court.
Instead, he filed his habeas petition on December 3, 2002.

11

## B.   Rojas's Post-Trial Motion

In May 1998, counsel for Guerrero's co-defendant, Radames
Rojas, filed a motion, under N.Y. Crim. Proc. Law § 330.30(3), to
set aside Rojas's verdict based on the discovery of new evidence
after trial. (See St. Clair Aff., Ex. 5). Counsel noted that Rojas
had previously made a section 330.30 motion based on a statement by
Guerrero to the Probation Department that exculpated Rojas, but
that the motion had been denied because Guerrero's statement had
never been sworn to. (Id. at 2-3). As recounted by Rojas's
attorney, the prosecutor met with Guerrero after he had exculpated
Rojas and, during the course of the discussion, Guerrero provided
the name of Jose Rodriguez as a participant in the shooting and
also mentioned the name "Mola" or "Morla." (Id. at 3). Counsel
recounted that a review of Guerrero's prison visitor log had
revealed that a Jose Morla had recently visited him, and that Morla
and Rodriguez lived at the same address. (Id.). The prosecutor
obtained an arrest photograph of Morla, who bore "an uncanny and
striking resemblance" to Rojas. (Id. at 4). Counsel argued that
Morla fit the description of the second perpetrator, in terms of
skin color, hair style, and height, and suggested that Rojas had
been mistakenly identified as an associate of Guerrero, and that
this evidence gave rise to a reasonable doubt that Rojas had been
involved in the crime. (Id. at 5-6).

12

The prosecutor joined Rojas's motion to set aside the verdict. (See St. Clair Aff., Ex. 7). She enumerated the facts that caused her to support Rojas's application, including: (1) Guerrero's statement to Probation, in which he claimed that Rojas had not been involved in the crime, and his later statement during an interview with her in which he mentioned Jose Rodriguez and "Mola" or "Morla"; (2) her confirmation that Rodriguez and Jose Morla had visited Guerrero in prison; (3) the "striking" resemblance between Morla and Rojas; (4) a statement by Rodriguez identifying Jose Morla as having been present at the argument between Guerrero and Brito before the shooting; and (5) Brito's statement that the three men who were present at that argument were the same three people who had shot him. (Id.).

In October 1998, the trial court granted the motion to set aside the verdict, and dismissed the case against Rojas. (See St. Clair Aff. Ex. 8).

## IV.  The Federal Proceeding

In the current habeas proceeding, Guerrero has submitted a pro se memorandum of law in which he repeats, almost word for word, the evidentiary-insufficiency point that his attorney argued in his state-court appellate brief. (See Guerrero Memo at 11). He asserts

13

that Brito had a long history of drug dealing and lying to police officers, that he lied to immigration officials and had not paid income taxes, and that his testimony was "p[a]tently incredible" and "filled with untruthfulness." (Id. at 11, 19, 22). He also points out that Alvarez admitted lying to at least four police officers about the shooting, and told a completely different story at trial than she had told before the Grand Jury. (Id. at 11, 23).

As a second point, Guerrero seeks to gain the benefit of Rojas's exoneration. Thus, he notes that he and Rojas were both identified by Brito and Alvarez and that, because of that identification, both were found guilty. According to Guerrero, Rojas was released because Brito and Alvarez "were wrong in their positive identification" of Rojas; and therefore they undoubtedly had made the same mistake in identifying him. (Id. at 11). In addition, Guerrero declares that the release of Rojas cast a "big shadow of doubt" on Brito's and Alvarez's credibility, and their testimony could not support his conviction. (Id. at 11-12, 24).

Respondent has sought dismissal of the petition. He argues that petitioner's claim based on the release of Rojas is unexhausted. He further argues that the evidentiary-insufficiency claim is meritless.

14

Petitioner submitted a Traverse and a "Memorandum in Opposition to Respondent's Response." In those documents, he essentially repeats the credibility arguments raised in his initial memorandum.

## **ANALYSIS**

## I. Claim regarding the dismissal of Rojas's conviction

### A. Exhaustion

The State asserts that Guerrero never argued in state court that the dismissal of Rojas's conviction cast doubt on Brito's and Alvarez's identification of him, and therefore that this claim is unexhausted. (See Resp. Memo at 5). The State adds that, in order to exhaust a claim, a petitioner must present it to the state courts; because the claim would have to be proven by facts outside of the record, Guerrero still had an available state remedy: a motion to vacate the judgment based on new evidence, pursuant to N.Y. Crim. Proc. Law § 440.10(1)(g). (Id. at 5-6). Noting that the statute requires that a motion to vacate be made with "due diligence after the discovery of such alleged new evidence," the State observes that Guerrero's failure to make a motion five years after his conviction, and his failure to place the facts about the

15

dismissal of Rojas's case on the record, might result in the denial of such a motion. (Id. at 6). The State concludes that, because the court is confronted with a mixed petition, containing both unexhausted and exhausted claims, the court could either (1) dismiss the entire petition or give the petitioner the option to excise the unexhausted claim from the petition, see Zarvela v. Artuz, 254 F.3d 374, 380-82 (2d Cir. 2001); (2) dismiss the unexhausted claim and grant petitioner a conditional stay of proceedings on the exhausted claim, pursuant to Zarvela, 254 F.3d at 380-82; or (3) deny the exhausted claim on the merits and dismiss the unexhausted claim as procedurally forfeited, pursuant to Turner v. Artuz, 262 F.3d 118, 122-23 (2d Cir. 2001). (See Resp. Memo at 5-7).

In his Memorandum in Opposition, Guerrero argues that this claim was exhausted because his counsel and the prosecutor mentioned the dismissal of Rojas's case in footnotes in their briefs to the Appellate Division, and his counsel noted that fact in his letter application to the New York Court of Appeals. (See Memo in Opp. at 4 & Ex. A).

The habeas statute provides that a federal court may not grant a writ of habeas corpus unless a petitioner has exhausted his remedies available in the state courts. 28 U.S.C. § 2254(b)(1)(A).

16

A petitioner exhausts his state-court remedies by "fairly present[ing]" each federal claim for relief to the highest state court capable of review. See, e.g., Baldwin v. Reese, 124 S.Ct. 1347, 1349, 1351 (2004); Fama v. Com'r of Corr. Servs., 235 F.3d 804, 808-09 (2d Cir. 2000) (quotations omitted). Federal courts "will not consider a constitutional challenge that has not been 'fairly presented' to the state courts." Ayala v. Speckard, 89 F.3d 91, 94 (2d Cir. 1996). Such fair presentation to the state courts requires that the petitioner assert the same legal theory and premise it on essentially the same body of facts as he invokes in the federal court. See, e.g., Gray v. Netherland, 518 U.S. 152, 163 (1996); Gray v. Hoke, 933 F.2d 117, 119-20 (2d Cir. 1991).

If a claim is not fairly presented to the state courts, the habeas court will nonetheless deem it exhausted if there is "an absence of available State corrective process under § 2254(b)(1)(B)(i)" because "it is clear that the unexhausted claim is procedurally barred by state law and, as such, its presentation in the state forum would be futile." Aparicio v. Artuz, 269 F.3d 78, 90 (2d Cir. 2001). When a petitioner "fail[s] to exhaust state remedies, 'and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred,' federal habeas courts also must deem the claims procedurally defaulted." Id.

17

(quoting Coleman v. Thompson, 501 U.S. 722, 735 n.1 (1991)).

The State correctly argues that Guerrero's claim involving the dismissal of Rojas's conviction is unexhausted because he never raised it in the state courts. Although petitioner notes that the dismissal of Rojas was mentioned in a footnote in his brief to the Appellate Division and in his leave application to the New York Court of Appeals, the mere reference to that event as part of a procedural account of prior proceedings in this case is not equivalent to making a constitutional argument about the misidentification of Guerrero.

The State is also correct that Guerrero still has a vehicle to raise the claim before the state courts -- a section 440.10 motion -- and it is yet again correct that such a motion would likely be denied because Guerrero still has not brought it -- now almost seven years after Rojas's conviction had been overturned -- and thus it appears that Guerrero has not comported with the "due diligence" requirement of section 440.10(1)(g).

Nevertheless, the fact that the state courts may be unlikely to grant Guerrero relief via a section 440.10 motion "does not cure his failure to have raised it in state courts. It is well established that a petitioner may not bypass state courts merely

18

because they may be unreceptive to the claim." Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2002). Accordingly, because Guerrero still has a state-court option available on this claim, we cannot say that this claim is procedurally forfeited, since it is not certain that there is an "absence of state corrective process" available. Aparicio, 269 F.3d at 90. Thus, this claim is unexhausted and the petition, which also contains the exhausted evidentiary-insufficiency claim, is a mixed petition.

"A district court confronted with a mixed petition can offer the petitioner the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims." Pratt v. Greiner, 306 F.3d 1190, 1196-97 (2d Cir. 2002) (quotations and citations omitted). The Second Circuit has also recommended that, where a district court is confronted with a mixed petition, and the exhausted claim has merit, the court should exercise its discretion to "retain jurisdiction over a meritorious claim and stay further proceedings pending the complete exhaustion of state remedies" or dismiss the petition in its entirety. See Zarvela, 254 F.3d at 380 (quoting Duncan v. Walker, 533 U.S. 167, 182-83 (2001)).

A district court has yet another option if the unexhausted claim is clearly meritless: it may "deny a petition on the merits

19

even if it contains an unexhausted claim" pursuant to 28 U.S.C. § § 2254(b)(2).[4] Pratt, 306 F.3d at 1197. Accord Figueroa v. Greiner, 2005 WL 249001, *10 (S.D.N.Y. Feb. 3, 2005). That is the case here -- petitioner's effort to derive a benefit from the vacatur of his co-defendant's conviction is plainly misguided. Thus, it is not necessary for us to resolve the exhaustion issue or to decide whether to dismiss or stay the petition while Guerrero exhausts this claim, because we may deny Guerrero's unexhausted claim on the merits.

B.    The Merits

The record and the material contained in the section 330.30 motion of Rojas reveal the meritlessness of Guerrero's argument. The circumstances surrounding the identification of Guerrero and the misidentification of Rojas are completely different. Brito had known Guerrero for seven years prior to the shooting, and had worked both with and for him in the drug business. Moreover, Brito identified Guerrero as coming to the drug spot a few days prior to the shooting, and threatening him when he did not give up the

<hr>

[4] 28 U.S.C. § 2254(b)(2) provides, "An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the Courts of the State."

spot.[5] In contrast, Brito testified that he had never before seen the two associates who accompanied Guerrero on that occasion, including the man he later identified as Rojas. Brito stated that those same two men were also involved in the shooting. As for Alvarez, she had known Guerrero for two to three years previously, and saw the two associates for the first time during the incident. Thus, both witnesses were acquainted with Guerrero, and made an unequivocal identification of him.

Brito's and Alvarez's misidentification of Rojas is the more understandable in view of the facts that were brought to light in Rojas's section 330.30 motion. The post-conviction inquiry into the identity of Guerrero's associates was initiated based on a statement made by Guerrero himself to a probation officer, in which he admitted that Rojas had not participated in the shooting, named Rodriguez, and mentioned "Mola" or "Morla." That highly self-inculpatory statement by Guerrero led to the identification of Morla as the likely third participant in the shooting. In addition, Morla had a distinct physical resemblance to Rojas.

Under the circumstances, it became clear that Brito and

---

[5] Although we do not have the transcript of the Wade hearing, whatever challenges Guerrero made to his pretrial identification were denied, and he has not raised any issues related to this hearing either in the state court or this court.

21

Alvarez had misidentified Rojas as the shooter, and thus the prosecutor joined the motion to dismiss Rojas's conviction. In striking contrast, there never was any question about the identification and participation of Guerrero in the shooting. The facts leading to the witnesses' misidentification of Rojas did not apply to Guerrero, and Guerrero's syllogistic reasoning cannot be his key to the jailhouse door.

In sum, Guerrero's claim is meritless.

## II.   The Evidentiary-Insufficiency Claim

Petitioner asserts that the evidence offered at trial was legally insufficient to prove him guilty of the attempted murder of Brito because of the unbelievability of the testimony of both Brito and Alvarez, and their general untrustworthiness. He ceaselessly points out Brito's history in the drug business, his lying to immigration officials, and his failure to report drug income to the IRS, and Alvarez's initial lies to the police about what transpired during the shooting. Because his conviction rests on their testimony, and because there is no physical evidence linking him to the crime, he concludes that the prosecution failed to prove his guilt beyond a reasonable doubt. (Habeas Pet. at ¶ 13; Guerrero Memo at 22-24).

22

A.   Standard of Review

Where the state court has addressed a habeas petitioner's claims on the merits, the petitioner must meet a stringent standard before a federal court can issue the writ. Specifically, 28 U.S.C. § 2254(d) provides that in such a situation, habeas relief may be granted only when the trial court's decision

(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d). See, e.g., Bell v. Cone, 535 U.S. 685, 693-94 (2002); Williams v. Taylor, 529 U.S. 362, 412-13 (2000); Brown v. Artuz, 283 F.3d 492, 497-98 (2d Cir. 2002).

Pursuant to the Antiterrorism and Effective Death Penalty Act, "a determination of a factual issue made by a State court shall be presumed to be correct. The applicant shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); McKinney v. Artuz, 326 F.3d 87, 101 (2d Cir. 2003). This presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility, see Miller-El v. Cockrell, 537 U.S. 322, 339 (2003), Cotto v. Herbert, 331 F.3d 217, 233-34 (2d Cir. 2003), which is a

23

question for the trier of fact to decide. See, e.g., Jackson, 307 U.S. at 319. Thus, a verdict that is based on such an assessment is not subject to second-guessing by the habeas court and will not be disturbed. See, e.g., Herrera v. Collins, 506 U.S. 390, 400-02 (1993); Quartararo v. Hanslmaier, 186 F.3d 91, 95 (2d Cir. 1999). Accord, United States v. Vasquez, 267 F.3d 79, 91 (2d Cir. 2001). Under this "rigorous standard," a "federal habeas court faced with a record of historical facts that supports conflicting inferences must presume -- even if it does not affirmatively appear in the record -- that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution." Wheel v. Robinson, 34 F.3d 60, 66 (2d Cir. 1994).

A "petitioner bears a heavy burden in convincing a habeas court to grant a petition on the grounds of insufficiency of the evidence." Fama, 235 F.3d at 812. A state criminal conviction will be upheld if, "after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson, 443 U.S. at 319 (emphasis in original). Accord, e.g., Wright v. West, 505 U.S. 277, 296 (1992); Fama, 235 F.3d at 811.

24

## B. The Merits

Petitioner has plainly not met his burden of showing that no rational trier of fact, when viewing the trial evidence in the light most favorable to the prosecution, could have found the essential elements of the crime beyond a reasonable doubt. A habeas court looks to state law for the elements of a crime. See, e.g., Fiore v. White, 531 U.S. 225, 229 (1999); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). Pursuant to New York Penal Law §§ 110/125.25, a person is guilty of attempted murder in the second degree when, with intent to cause the death of another person, "he engages in conduct which tends to effect the commission of such crime." Under Penal Law § 265.03(2), "a person is guilty of criminal possession of a weapon in the second degree when, with intent to use the same unlawfully against another . . . (2) he possesses a loaded firearm."

Brito's eyewitness testimony was that Guerrero, whom he had known for years, possessed a loaded firearm, and shot at him multiple times, in a manner from which a jury could easily infer that Guerrero intended to cause Brito's death. Alvarez reported that she had seen Guerrero and two cohorts run away after the shooting. If credited, the testimony of these two eyewitnesses is ample to justify the conviction.

25

Moreover, petitioner's current attack on the credibility of these witnesses cannot save his claim. The jury heard Brito testify in detail about his prior drug dealing, his illegal entry into the country, and his non-reporting of drug income to the IRS. They also heard Alvarez testify that she had lied to the police officers about the incident and why she had lied. Defense counsel focused on these credibility issues, and they were amply presented for the jury's consideration. In finding Guerrero guilty, the jury plainly credited Brito's and Alvarez's testimony, in spite of Brito's less-than-upstanding past, and Alvarez's less-than-forthcoming earlier description about the shooting.

The jury's factual findings concerning credibility are presumed correct, and a federal habeas court may not second-guess that assessment. See, e.g., Herrera, 506 U.S. at 400-02. Moreover, Guerrero has not rebutted that presumption by clear and convincing evidence. See 28 U.S.C. § 2254(e)(1). Since the testimony of even a single eyewitness is sufficient to support a conviction, United States v. Frampton, 382 F.3d 213, 222 (2d Cir. 2004), the trial court's verdict, and its affirmance by the Appellate Division, were not "contrary to" nor "unreasonable applications" of the standard set forth in Jackson.

Furthermore, to the extent that Guerrero argues that his

26

conviction was against the weight of the evidence, such a claim is not cognizable on habeas review. See Santos v. Allard, 2005 WL 783386, \*3 (S.D.N.Y. Apr. 8, 2005) ("Under New York law, a conviction may be reviewed by the appellate court based on the weight of the credible evidence. . . . [H]abeas review is only available for claims presenting violations of federal law. . . . Thus, [petitioner's] claim that his conviction was against the weight of the evidence cannot be heard by this Court.") (citations omitted) (citing cases). See also Maldonado, 86 F.3d at 35.

## CONCLUSION

For the reasons noted, we recommend that the writ be denied and the petition dismissed with prejudice.

Pursuant to Rule 72 of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from this date to file written objections to this Report and Recommendation. Such objections shall be filed with the Clerk of the Court and served on all adversaries, with extra copies to be delivered to the chambers of the Honorable Richard J. Holwell, Room 1950, 500 Pearl Square, New York, New York 10007, and to the chambers of the undersigned, Room 1670, 500 Pearl Street, New York, New York, 10007-1312. Failure to file timely objections may constitute a waiver of those objections both in the

District Court and on later appeal to the United States Court of Appeals. See Thomas v. Arn, 474 U.S. 140, 150 (1985), reh'g denied, 474 U.S. 1111 (1986); DeLeon v. Strack, 234 F.3d 84, 86 (2d Cir. 2000) (citing Small v. Secretary of Health and Human Services, 892 F.2d 15, 16 (2d Cir. 1989)); 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72, 6(a), 6(e).

**DATED: New York, New York**
**April 29, 2005**

**RESPECTFULLY SUBMITTED,**

**MICHAEL H. DOLINGER**
**UNITED STATES MAGISTRATE JUDGE**

Copies of the foregoing Report and Recommendation have been mailed this date to:

Mr. Manuel Guerrero
#98-A-1944
Downstate Correctional Facility
Fishkill, New York 12524

Lynetta M. St. Clair, Esq.
Assistant District Attorney
    for Bronx County
198 East 161st Street
Bronx, New York 10451